Thank you and good morning, Your Honor. Good morning. May it please the Court. Your Honor, Mr. Romero-Mendoza is here seeking review of his case under Section 321.83 in the denial of his request for derivative citizenship. There are four fundamental parts to this. One is that the petitioner was born out of wedlock. Two, that paternity was established by legitimation. And three, that the mother was naturalized and that the child was residing in the United States as a lawful resident. The BIA judge decided this case and said that it's a close question on the legitimation issue. And there are two real issues that it brings to the attention of the Court. The first, obviously, is the issue of the father's name on the birth certificate. And then the second is the issue of the petitioner's parents and the marriage. With respect to the first issue, the birth certificate, Your Honors, I'm not quite sure, looking at the record, whether or not the birth certificate gives the intended effect that the judge intended it to when he said that the signature or the father's name on the birth certificate in and of itself legitimated the child. That's inconsistent necessarily with the law on the issue, and specifically the case of the matter of Ramirez. But before I get to that, I just want to make an observation about the birth certificate. First of all, when the birth certificate was raised to the Court, the Court said that the birth certificate was not admissible under 8 CFR 1287.6. The Court objected. I'm sorry. The government objected. And then the judge rejected the birth certificate and actually set a new hearing date for July 11, 2008, so that the government could put in a request under 8 CFR 1287.6 to have a certified copy of the birth certificate. And there was even some discussion in the record about having the consulate of El Salvador. And the reason this is important is because under the matter of Ramirez, it's not simply the birth certificate. The matter of Ramirez actually says that it requires an act of civil registration. So it's not merely dad's name on the birth certificate, because anybody could put dad's name on the birth certificate. Mom could put dad's name on the birth certificate. The nurse can put dad's name on the birth certificate. It's not merely a name on a birth certificate that operates to legitimate or illegitimate a child. So what is civil registration on the birth certificate? I'm not quite sure. What I have gleaned from the law is that it is a procedure by which the government uses to as an indication that both parents basically admit and agree that this is their  And that's the only way that they can legitimate the child under the act of civil registration. Was that point made in the proceedings below regarding whether or not civil registration was required, and if so, whether or not that was met? Was that argument made to the immigration judge? Your Honor, I believe so. I believe that argument is part and parcel of the 8 CFR 1287.6, because it addresses the legitimacy of the birth certificate in and of itself. That's a much more refined argument, though, than was made before the immigration judge. Well, I think that under 8 CFR under the statute, that that is included in the statute, because once that birth certificate is authenticated under 1287.6, then it's pretty much a foregone conclusion. It's kind of a presumption. Indeed. Indeed. How does that tie in with the fact that the Constitution of El Salvador essentially granted legitimation to all children, regardless of whether they were parents were married or not? It did. It did in 1983. But if you look at the case of Enri Moraga, what Enri Moraga holds is that for children that were born prior to 1983, Moraga does not apply. But, in fact, the matter of Ramirez applies. And if I could continue with, and I'll actually just read just a portion of it. It says, We modify our holding to the extent that a child born out of wedlock who was under 18 years on December 16, 1983, or who was born in and after. And then it says this means that a child must have been born on or after December 1965 in order to get the benefit of the change in law. And the reason that's significant is this case actually dealt with a visa application, preferential treatment. I'm sorry. So just to tie it so I can follow the argument. Is your argument that Romero Mendoza is covered by Ramirez? That is correct. All right. And so he was born when in relation to the he was born before? He was born in 1979, four years before 1983. So he falls under the prior law. And under that law, under Civil Code 280, it requires an act of civil registration. There's two requirements or two options, I should say. Under Civil Code 280, and this is all from Ramirez, an act of civil registration. But that meant registering the birth certificate with the office of the civil registry, nothing more, nothing less. Right. Plus marriage. Plus marriage. So are you saying the birth certificate was not registered with the office of the civil registry? I'm saying there's no indication in the record that it was or was not. Where was it retrieved from? When the hearing was reconvened for the government to have authenticated the birth certificate, what happened? There was no authentication in the record. Nothing happened. And the judge looked at the certified copy of the birth certificate and made his ruling. Doesn't certified indicate that it's been registered? No, Your Honor, it does not. The certified copy actually came from Petitioner's Counsel, who just transcribed it. It's not a certified copy from a court or a government agency. Not from a government agency. No. And if you have a subsequent marriage, the child must be acknowledged on the record of marriage. And there's no evidence. Now, what says that the child must be acknowledged on the marriage record? What case says that? That's also a matter of Ramirez, Your Honor.     It's not a matter of Ramirez. It's not a matter of Ramirez. It's a matter of Ramirez. All of this is in that case. And in the back of the case is actually a copy of the Civil Code. And so in switching to the marriage issue, there's only one instance in the record that talks about the Petitioner's parents being married. And actually, it is not evidence. It is from the government's, it's actually from one of the government's pleadings. And it says two things. It says that as of 8-22-96, this is from the government's statement of position at AR-114, that the Petitioner was married. The Petitioner's parents were married, rather. And then it says here, Respondent claims that his parents were not legally married at the time he acquired, he acquired derivative citizenship. So there's another issue there with respect to whether or not he was legally married. Your Honor, I see I've just got under two minutes, so I'm going to leave a little bit for rebuttal, if I may. You may. May it please the Court. My name is Claire Workman, and I represent the Attorney General, the Respondent in this case. The Petitioner has not disputed that this Court's decision in Ayala Villanueva directly controls this case, nor has he distinguished it from this case. Specifically, the Petitioner's parents married each other before he turned 18, thereby legitimating him. Okay. Just so I understand. Now, the government's relying, there are three options. There's one, there's the birth certificate. It looks like there's the constitutional amendment. And then there's the marriage. And is the government relying entirely now on the marriage? No, Your Honor. It's our position that both the marriage, that the marriage did establish legitimation pursuant to this Court's case law. Okay. That's one. Okay. But also, under the Salvadoran Constitution, that because all children were legitimated, as the Board's decision in Moraga found and relied on in this case. Okay. So you'll address that as well. Yes, Your Honor. Okay. I'm sorry. Go ahead with your marriage first. And so Petitioner conceded that his parents did marry after his birth, before he turned 18. And in Ayala. Where did he concede that? It's on page 10 of his brief. He – because DHS, in the record, indicated that on Petitioner's mother's naturalization application, she indicated that she was married to Petitioner's father as of August in 1996, and Petitioner was under 18 at that time. Petitioner has never disputed that. I'm sorry, Your Honor. Be careful how you phrase it. We'll look at what you've cited. But are you saying he affirmatively conceded it, or he failed to deny? In his brief, he – In the briefing. He says – here, Your Honor, I will look at the brief. But wait a minute. You're talking about briefs. Okay. Yes, Your Honor. Briefs on appeal? Yes, Your Honor. What did the IJ and the BIA have before it? Not after the fact. They ruled based on evidence that was put before them. Counsel has said there's no evidence in the lower – in the administrative proceedings or the record that establishes that they were, in fact, married. Now, what are you relying on for – to refute that? Your Honor, it's Petitioner's burden to prove. And once there's a presumption of – once alienation has been established, it's his burden to prove citizenship. And so that's part of his burden of proof. But he never contested that his parents had married after his birth. And so under Ayala, it was a similar situation where there was a Salvadoran who was born out of wedlock and – in 1973. And his mother, Villanueva, married her husband, whom this Court referred to as Humberto, three years later. And that Ayala believed to be his father. And like the Petitioner in this case, Ayala became a lawful permanent resident and his mother naturalized, all while he was under the age of 18. And unlike this case, in Ayala, there was some conflicting evidence as to the Petitioner's paternity. So this Court had to transfer to district court for – to resolve the genuine issue of material fact. But this Court stated, quote, Humberto's marriage to Villanueva establishes Ayala's paternity by legitimation and destroys Ayala's claim to citizenship only if Humberto is Ayala's father, end quote. And so in this case, because Petitioner has not disputed that the man listed on his birth certificate is his father and has conceded that his parents married, this Court's opinion in Ayala Villanueva is directly controlling. Okay. So that comes to the first argument that you open with, which is he's never contested that the name on the birth certificate was the father. But it's – do you think that's enough? You didn't have to establish that the father actually authorized his name going on? I think that under the Ramirez case, which is – had the acknowledgment requirement, which is still in effect, as far as I can tell, in addition to legitimation has been established for children born after 1965. So because the 1983 Constitution applied to children who were under 18 at the time. So – but the acknowledgment, the act of the civil registration of the birth certificate would be – there's no – would be sufficient to meet that requirement. So just so I can summarize, on the ground of marriage and paternity, you rely on the failure to contest the presumption that they were married? Well – Which is – the marriage is established by what? The presumption of marriage. Oh, the marriage has been established by what Petitioner's mother indicated on her naturalization application. That she was married. Yes. To Petitioner's – When she was married. It indicated as of the date of the naturalization application that she was married to Petitioner's father. And – Then to – then the next step in it is that the father of the petitioner here was the name – was the person to whom she got married? Yes, Your Honor. Okay. And that the identity of the father and her husband are established by the name on the birth certificate. Yes, Your Honor. Okay. Even if the birth certificate was prepared outside of an official government office, that's what's in the record, the birth certificate and the translation? Yes, that's what we have, Your Honor. Okay. And it's because it's Petitioner's burden to lay the foundation and all of that to – or to counter it, then he loses. Yes. On that alone, under AIEA. Yes, Your Honor. That's our position. So then the other – are you going to the alternative ground then? Before we leave that, did the name on the birth certificate for the father match the name on the marriage license that the mother gave? Your Honor, we don't have the marriage license. It was not part of the record. Did she name the person when she said who she was married to? Did she give a name? I believe so, Your Honor. And did that name match the name that was on the birth certificate? I believe so, Your Honor. Did the acknowledgment occur prior to the marriage? I'm sorry, Your Honor? Did the acknowledgment occur prior to the marriage? Yes, Your Honor. I believe so, because the acknowledgment was when the birth certificate was registered, and I believe that happened shortly after Petitioner's birth, and then the marriage happened. We don't know exactly when the marriage happened. But it happened sometime before the naturalization application was filed. Yes, Your Honor. And also before Petitioner turned 18. I see that I'm almost out of time. Okay. And why does the statute apply? He said the counsel said that under Ramirez, the amendment to the Constitution wouldn't apply to children born before 1983, I think.  Under Moraga, the statute, the Constitution, applies to children who were under 18 in 1983 when it was. As long as they were under 18. Yes, Your Honor. Regardless of when they were born. As long as being born made them under 18 as of 1983. Yes, Your Honor. What's the effect of Ramirez? What's your response that Ramirez somehow modified that? Well, Ramirez is only good law insofar as it discusses the acknowledgement requirement, and because under Salvadoran law, you no longer need marriage alone plus acknowledgement to establish legitimation because the Salvadoran Constitution effectively eliminated all legal distinctions between children born in and out of wedlock. So, and even if this Court accepts Petitioner's argument that children didn't have full equal rights until the 1993 family code was passed in El Salvador, Petitioner was still under 18 at that time, and he has never disputed that that, that he was legitimated under that. And thank you. Thank you. All right. Counsel, you have some rebuttal time. Yes, Your Honor. A couple of quick points. First of all, I'd like to make it clear on the appellate record that the Petitioner did not concede the parent's marriage or the date of the marriage. Why is it in the brief then? Well, in the brief, it cites AR-114, which is the government's, the government's memorandum to the court. If you put it in your brief as part of the factual record, the relationship between Petitioner and Oscar Armando Romero Rivera, you put Mr. Romero subsequently married Petitioner's mother as of August 1996. If you didn't believe that, why would you incorporate it into your factual section? Well, because I was mistaken as to the authority. I thought it was in the record. I looked at everything in the record and just assumed this was in the record. And upon closer inspection, I realized it was actually the government's position and not from the court. In addition, Your Honor. Well, in any event, they argue you had the burden to disestablish or disprove, prove negative, I guess. Well, I think what we had the burden to prove is the four elements that he was out of wedlock when he was born, which he did. The mother was naturalized, which we've established that he lived in the United States as well. It was also that paternity was established by legitimation. It was not established by legitimation by showing that he was born out of wedlock and that there was no act, if you will, on behalf of the father. But if I could just raise one point before I'm out of time, which is to distinguish the Ayala case quickly, because I think it's important to note that in that case, the administrative record contained four copies of the birth certificate. And the government was required, or I shouldn't say required, the government actually got evidence from the head of family registry and conception in El Salvador to talk about the certification of these birth certificates and found out, in fact, one of them belonged to another man. So it's not enough just to put the birth certificate and say it is of record and it is official, because, again, in this case, the Ayala case, when they went back to El Salvador, they found out, in fact, the birth certificate was not what it reported to be. But that's for the I.J. to determine what evidence should be admitted and whether or not it's been properly authenticated. That's not our role. I understand. But the I.J. didn't do that job. So I think they should. Okay. Thank you, counsel. Thank you. We thank the counsel for argument and will submit the case. Were you pro bono in this case? Counsel? Were you pro bono in this case? Were you pro bono in this case? Were you pro bono in this case? We appreciate your service.
judges: Fisher, Rawlinson, Cjj Timlin (C. Cal.), Dj